**WRONKO LOEWEN BENUCCI**
Michael Poreda, Esq. (025492010)
69 Grove Street
Somerville, NJ 08876
Telephone: (908) 704-9200
Fax: (908) 704-9291
e-Mail: poreda@poredalaw.com
*Attorney for Plaintiff*

### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE NOONAN, <br><br> *Plaintiff*, <br><br> vs. <br><br> NEW JERSEY DEPARTMENT OF CORRECTIONS, SCO KEVIN STREET, ADMINISTRATOR WILLIE BONDS, RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY, NURSE LANCE CARVER, ADMINISTRATOR OF THE ESTATE OF LANCE CARVER, DR. JOHN DOE, M.D., MSCF JOHN DOES 1-10, SWSP JOHN DOES 1-10. <br><br> *Defendants*. | Docket No. 1:20-cv-1049-RBK-JS <br><br> **Civil Action** <br><br> **SECOND AMENDED COMPLAINT** |

1

Plaintiff, George Noonan, by way of Complaint against Defendants, says as follows:

## JURISDICTION

1. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the question arises under the Constitution of the United States, namely whether Defendants violated Plaintiff's rights under the Eighth Amendment.

2. This Court has jurisdiction over state law claims herein presented pursuant to 28 U.S.C. § 1367 because the claims are part of a case over which the court has federal question jurisdiction.

3. Venue is properly laid in the District of New Jersey pursuant to 28 U.S.C. § 1391(b)(2) because all relevant events took place in New Jersey, specifically at Mid-State Correctional Facility in Wrightstown, New Jersey.

## THE PARTIES

4. Plaintiff George Noonan, whose date of birth is August 1, 1985, is an inmate confined at Northern State Prison, P.O. Box 2300, 168 Frontage Road, Newark, NJ 07114.  His SBI is 599702C.

5. Plaintiff has never filed a federal lawsuit before.

6. The New Jersey Department of Corrections is a state agency headquartered at Whittlesey Road, Trenton, NJ 08618.

7. Defendant Rutgers , the State University of New Jersey is a corporate entity headquartered at Rutgers University, Office of the Secretary, 7 College Avenue, Room 1111, New Brunswick, NJ 08901.  Under the subdivision "University Correctional Health Care," Rutgers is the medical contractor for inmates at all Department of Corrections facilities.

8. Defendant Kevin Street is a prison guard at South Woods State Prison, 215 South Burlington Road, Bridgeton, NJ 08302.  He is an employee of the Department of Corrections.

9. Administrator Willie Bonds is the Warden of South Woods State Prison, 215 South Burlington Road, Bridgeton, NJ 08302.  He is an employee of the Department of Corrections.

10. Defendants Nurse Lance Carver and Dr. John Doe, M.D. are, or were at all relevant times, employees of Rutgers University – University Correctional Health Care.  These

        individuals are, or were at all relevant times, employed at Mid-State Correctional Facility, P.O. Box 866, Wrightstown, NJ 08562.

11. On or about August 20, 2020, Lance Carver died. The administrator of his estate is hereby named as a defendant.

12. MSCF John Does 1-10 are medical and correctional staff at Mid-State Correctional Facility who ignored Plaintiff's complaints about his broken wrist and/or ignored the obvious signs that his wrist was broken and needed medical attention.

13. SWSP John Does 1-10 are supervisors of Kevin Street at South Woods State Prison.

## FACTS

*Broken Wrist*

14. In March 2018, Plaintiff was in the custody of the New Jersey Department of Corrections at Mid-State Correctional Facility.

15. Plaintiff was being treated for opioid addiction with suboxone and did not feel well due to withdrawal from opioids and/or side effects of the suboxone.

16. He requested a bottom bunk because he did not feel well, but the request was denied.

17. March 9, 2018 was the third night of suboxone treatment.

18. Plaintiff was on the top bunk when he passed out and fell to the concrete floor, hitting his head and his wrist.

19. When Plaintiff regained consciousness, he had a bump on his head, and he was dizzy and lightheaded. Plaintiff suspects he had a concussion.

20. More critically, Plaintiff's wrist was visibly deformed and was extremely painful.

21. In the medical unit of Mid-State Correctional Facility, guards charged Plaintiff with fighting because he was in such a visibly injured condition.

22. In the medical unit, Defendants Nurse Lance Carver and Defendant John Doe, MD, a doctor with an African name, both examined Plaintiff's body and listened to his subjective symptoms, but they stated that he needed no medical treatment.

23. Defendants allowed guards to place Plaintiff into pre-hearing detention without giving him any treatment, despite having observed the obvious signs and symptoms of a concussion and a broken wrist.

24. Prison officials subsequently reviewed the video from Plaintiff's cell, determined that he had not been fighting but had indeed fallen out of bed, and they dismissed the charges against him.

25. Plaintiff made oral and written grievances for emergency care for his pain and his obviously broken wrist.

26. These grievances were ignored by Defendants MSCF John Does 1-10.

27. MSCF John Does 1-10 ignored Plaintiff's grievances pursuant to policies put into place and/or practices or customs encouraged, promoted, or knowingly tolerated by Rutgers University – University Correctional Health Care and/or the Department of Corrections.

28. Plaintiff did not even receive pain killers for his fracture.

29. Four weeks after the fall, Plaintiff's counselor, Jessica Betar, who could see that a broken bone was clearly pressing against the inside of Plaintiff's skin, brought him to the medical department, where he was seen by Nurse Practitioner Jay Williams, who recognized that Plaintiff's wrist was broken.

30. An x-ray was conducted, which confirmed the break.

31. Plaintiff was referred to an orthopedic surgeon at St. Francis Medical Center, Dr. Shakur, who performed surgery that involved the installation of a metal plate, 3 screws, and eight pins.

32. The surgery has left Plaintiff with permanent loss of range of motion and permanent pain.

*Lost Property*

33. Subsequent to his injury, Noonan was transferred to Northern State Prison.

34. On March 3, 2020, Noonan was transported from Northern State Prison to South Woods State Prison.

35. Noonan took with him, on his person, an overnight bag.

36. The rest of his belongings were packed into two boxes, including his legal paperwork, hundreds of dollars-worth of electronics, and the receipts he'd need to make a property claim.  These boxes were never reunited with him.

37. On March 21, 2020, Noonan was sent back to Northern State Prison. When he inquired about his property from Officer Perez, he was told it was still at South Woods State Prison.

38. Noonan contacted the ombudsman, who told him that the 2 boxes left NSP on March 9, 2020 and were returned to Northern State Prison on March 12, 2020.

39. The ombudsman later reported that one box of property was sent from SWSP to NSP on April 2, 2020. This box contained the few items that Noonan had taken with him in his overnight bag plus a few items he'd accumulated at SWSP. The items in this box are not in dispute.

40. Mr. Noonan's mother also tried to locate the lost property. When she called SWSP, she was told that the 2 boxes never arrived at SWSP.

41. Noonan asked Officer Cartrell about his property. Cartrell told Noonan that the boxes were sent to SWSP.

42. Noonan filed an inmate claim for lost property on June 18, 2020.

43. The Claim number is #7429.

44. The Claim was denied.

45. Plaintiff also filed a formal Tort Claim Notice on the State of New Jersey.

*Abuse of Disciplinary Sanctions*

46. During Plaintiff's brief stay at South Woods State Prison, he was the victim of a terror campaign by SCO Kevin Street.

47. Street was in charge of monitoring inmates who got suboxone therapy.

48. The procedure for suboxone was to place prisoners in rows of seats and then have a nurse place the suboxone in each prisoner's mouth.

49. The suboxone then has to dissolve, which takes a few minutes.

50. Before being dismissed from the room, prisoners' mouths are checked to make sure that their suboxone has completely dissolved.

51. After the nurse places the suboxone in the prisoners' mouth, she leaves the premises so as not to become a witness to Kevin Street's illegal campaign of false accusations.

52. Street randomly accuses the prisoners of abusing the suboxone.

53. On or about March 16, 2020, Plaintiff became one of Street's victims.

54. In the span of four months, Street filed disciplinary charges for mis-use of suboxone against 90 inmates.

55. This far exceeds the number of accusations at other prisons.

56. SWSP John Does 1-10 and Willie Bonds, who were supervisors of Street knew that Street was falsely accusing prisoners of abusing suboxone, and yet they did nothing to stop it, resulting in their personal involvement in Street's terror campaign.

57. SWSP John Does 1-10 and Willie Bonds in fact directed Street to hand out a large number of disciplinary charges for abuse of suboxone.

58. Being charged with abuse of suboxone results in confinement to "lock-up" for several months and loss of commutation time.

59. Plaintiff was sent to lockup for several months and lost commutation time.

## COUNT I
## 42 U.S.C. § 1983
## EIGHTH AMENDMENT – DELIBERATE INDIFFERENCE TO A SERIOUS MEDICAL NEED

60. Plaintiff has a right under the Eighth Amendment of the Constitution to be free from cruel and unusual punishment.

61. Cruel and unusual punishment may take the form of deliberate indifference to a serious medical condition.

62. A broken wrist and a concussion are serious medical conditions.

63. Defendants Nurse Lance Carver and Dr. John Doe, M.D. ignored the obvious signs and symptoms of a concussion and a broken wrist and denied plaintiff all treatment with deliberate indifference.

64. The deliberate indifference included the denial of pain medication.

65. MSCF John Does 1-10 were deliberately indifferent to Plaintiff's oral and written grievances requesting emergency care for his broken wrist. Those hearing the oral grievances could see that the bone was broken under Plaintiff's skin, just as Jessica Betar, could, but they denied all treatment.

66. Those receiving the oral grievances learned that Plaintiff had severely injured his wrist in a fall, that he could feel the wrist was broken, and that he was in intense pain, yet they ignored the grievances.

67. Defendant Rutgers University – University Correctional Health Care ("Rutgers") had a policy, practice, or custom that resulted in Defendants Carver and John Doe, M.D. not diagnosing or treating Plaintiff's wrist or concussion.

68. Rutgers also had policy, practice, or custom that encouraged and/or directed its employees to ignore inmates with broken bones, regularly leaving inmates with broken bones in cells for days or weeks before getting them medical treatment.

69. Rutgers's unconstitutional policies, practices, or customs also included, but were not limited to: intentionally providing diminished concern and care to injured inmates accused of disciplinary infractions, whether sustained or not; treating bone fractures and concussions as non-serious injuries; under-responding to serious injuries as a means of saving money.

70. Overall Rutgers had an unconstitutional policy, practice or custom that prioritized cost savings over inmate health.

71. Under this policy, practice, or custom, inmates who were not in immediate risk of dying were ignored so as not to expend resources addressing their serious medical needs.

72. This is accepted because Rutgers gets the protection of the Tort Claims Act and can therefore behave in an organizationally reckless manner without repercussion unless a plaintiff can pull off the gargantuan task of proving a policy, practice, or custom.

73. Because almost no attorneys in private practice will take on an inmate case, Rutgers considers its illegal policy, practice, or custom as a cost of doing business.

74. Because any transport out of a prison requires the expenditure of Department of Corrections resources and approval by DOC officials, Rutgers intentionally under-appreciates the seriousness of inmate complaints in order to save money and preserve its contract with the DOC. This is also an illegal policy, practice, or custom.

75. If Rutgers actually asked permission to send out all prisoners who needed outside medical treatment, the DOC would find another medical contractor who would consent, explicitly or implicitly, to minimize prisoner health problems.

## COUNT 2
## NEW JERSEY LAW AGAINST DISCRIMINATION – FAILURE TO ACCOMMODATE A DISABILITY

76. Plaintiff was ill due to his opioid addiction and suboxone treatment, which is a disability under the NJ LAD.

77. Plaintiff requested the reasonable accommodation of a bottom bunk.

78. The New Jersey Department of Corrections, via its employees, denied this reasonable accommodation.

79. As a direct and proximate result of the denial of a reasonable accommodation, Plaintiff fell off his bunk and was seriously injured.

## COUNT 3
## 42 U.S.C. § 1983
## FOURTEENTH AMENDMENT – SUBSTANTIVE DUE PROCESS VIOLATION

80. Kevin Street's copious accusations of suboxone abuse were made with knowing and/reckless disregard for the truth.

81. Plaintiff's disciplinary sanction was based on a false accusation.

82. The false accusation shocks the conscience.

83. Plaintiff's loss of commutation time infringed upon his interest in liberty, as he will have to serve a longer sentence due to the disciplinary charge.

84. SWSP John Does 1-10 and Willie Bonds were personally involved with Street's campaign to wrongly punish dozens of prisoners through their directing Street to do so.

85. Alternatively, SWSP John Does 1-10 and Willie Bonds were personally involved by being aware of Street's campaign to wrongly punish dozens of prisoners and doing nothing to stop it.

86. This cause of action is not a collateral attack upon the sanctity of the DOC administrative procedure, whereby a hearing officer determines whether the discipline was warranted.

87. Rather, it is a demand for monetary damages to compensate a loss of liberty. Such relief would not be available via the administrative procedure that culminates in appeal of the disciplinary proceeding to the Appellate Division of the Superior Court of New Jersey.

**Wherefore,** Plaintiff George Noonan demands

- Monetary Damages
- Punitive Damages
- Costs and fees
- Applicable statutory attorney fees
- Other such relief as the court may deem just and appropriate.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

## DESIGNATION OF COUNSEL

Michael Poreda, Esq. is hereby designated as trial counsel.

## **CERTIFICATION PURSUANT TO L.Civ.R. 11.2**

I certify that to the best of my knowledge and upon information and belief, the matter in controversy is not related to or the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

_____
MICHAEL POREDA, ESQ.
*Attorney for Plaintiff*

Date: September 17, 2020